**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| VIJAYKUMAR A. PATEL, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. PJM-05-1304 |
| | * | |
| MICHAEL CHERTOFF, Secretary, | * | |
| United States Department | * | |
| of Homeland Security, | * | |
| | * | |
| Defendant. | * | |

## OPINION

Vijaykumar and Bhavenaben Patel ("the Patels") filed a declaratory judgment action against Michael Chertoff ("Chertoff"), Secretary of the United States Department of Homeland Security ("DHS"), pursuant to 28 U.S.C. § 2201 (2004). They sought a declaration of their rights under the Immigration and Nationality Act § 245, 8 U.S.C. § 1255 (2004) ("INA") and a writ of mandamus compelling U.S. Citizenship and Immigration Services ("CIS") to re-open and approve their application for adjustment of status.[1] Chertoff filed a Motion to Dismiss, or Alternatively, for Summary Judgment, and the Patels filed a Cross-Motion for Summary Judgment. On March 27, 2006, the Court granted Chertoff's Motion to Dismiss for lack of subject matter jurisdiction and denied the Patels' Cross-Motion for Summary Judgment. Pursuant to Federal Rule of Civil Procedure 60(b)(6), the Patels have filed a Motion for Reconsideration. For the reasons set forth below, the Court DENIES the Motion.

---

[1] Prior to March 1, 2003, the functions of the CIS were the responsibility of the Immigration and Naturalization Service ("INS"), a division of the Department of Justice. The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, replaced the INS with a number of agencies including the CIS and made the CIS a division of the nascent Department of Homeland Security.

**I.**

The facts of this case are as follows:

The Patels are married Indian citizens who entered the United States without inspection in or around March 1996. In 2001, Vijaykumar Patel was hired to manage a coffee shop. His employer, who had obtained a labor certification for a prior employee from the U.S. Department of Labor in 2000, sought to substitute Patel as the beneficiary of the certification. On October 17, 2001, Patel received his labor certification substitution. Subsequently, his employment-based visa application was approved and his wife obtained classification as a derivative spouse. On or about April 25, 2002, the Patels filed applications for adjustment of status pursuant to 8 U.S.C. § 1255(i).[2] On December 2, 2004, the Patels' applications for adjustment of status were approved.

Two weeks later, however, DHS issued Notices to Appear to the Patels, seeking their removability as aliens not in possession of valid unexpired immigrant visas.

---

[2]

  8 U.S.C. § 1255(i) provides, *inter alia*:
    (1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States--
        (A) who--
          (i) entered the United States without inspection; or
          (ii) is within one of the classes enumerated in subsection (c) of this section;
        (B) who is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under section 203(d)) of--
          (i) a petition for classification under section 204 that was filed with the Attorney General on or before April 30, 2001; or
          (ii) an application for a labor certification under section 212(a)(5)(A) that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and
        (C) who, in the case of a beneficiary of a petition for classification, or an application for labor certification, described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000 [Dec. 21, 2000];
may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence . . . .

DHS acted pursuant to a regulation adopted by the Attorney General that limits the availability of status adjustments to applicants who are designated labor certification beneficiaries, as follows:

> *Only the alien who was the beneficiary of the application for the labor certification on or before April 30, 2001, will be considered to have been grandfathered* for purposes of filing an application for adjustment of status under section 245(i) of the Act. . . . An alien who was substituted for the previous beneficiary of the application for the labor certification after April 30, 2001, will not be considered to be a grandfathered alien.

8 C.F.R. § 1245.10(j) (emphasis added). The Patels concede that 8 C.F.R. § 1245.10(j) (2006) bars them from obtaining adjustment of status because Vijaykumar Patel was substituted for a previous beneficiary after April 30, 2001. They allege, however, that 8 C.F.R. § 1245.10(j) violates the language and intent of 8 U.S.C. § 1255, and is therefore *ultra vires*.[3]

## II.

Federal Rule of Civil Procedure 60(b) allows a court to reconsider a final judgment, order, or proceeding based on:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

---

[3]    In addition to filing suit in federal court, the Patels have filed a Motion to Terminate Proceedings in United States Immigration Court on the same grounds. On July 11th, 2006, Administrative Law Judge John Gossart, Jr. denied the Motion to Terminate, stating that "it is not within the Court's jurisdiction to make determinations of the validity of regulations promulgated by the Attorney General." ("Memorandum of Interlocutory Decision and Order," Ex. 1 to Plaintiffs' Supp.)

Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999). A party moving for reconsideration of an order of dismissal or summary judgment thus faces a substantial burden. *FDIC v. Heidrick*, 812 F. Supp. 586, 588 (D. Md. 1988), *aff'd sub nom.*, *FDIC v. Am. Cas. Co. of Reading, Pa., Inc.*, 995 F.2d 471 (4th Cir. 1993).

### III.

"Over no conceivable subject is the legislative power of Congress more complete than it is over [immigration]." *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909); *quoted in Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Reno v. Flores*, 507 U.S. 292, 305 (1993). There are also few subjects over which the jurisdiction of federal courts has been more extensively proscribed. "[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts . . . as one of their generally applicable equitable powers. Rather, it has been given them as a specific function to be performed in strict compliance with the terms of an authorizing statute . . . ." *United States v. Pangilinan*, 486 U.S. 875, 883-884 (1988) (citations omitted). Jurisdiction over immigration cases is an issue that has received considerable attention from legislators and jurists since the nation's immigration laws were consolidated in the Immigration and Nationality Act in 1952.

> From 1961 to 1996, the INA provided that review in the courts of appeals 'shall be the sole and exclusive procedure' for judicial review of deportation orders . . . . Congress's 'fundamental purpose' was 'to abbreviate the process of judicial review of deportation orders' and to 'eliminat[e] the previous initial step in obtaining judicial review - a suit in a District Court.' *Foti v. INS*, 375 U.S. 217, 224 (1963); *accord Agosto v. INS*, 436 U.S. 748, 752-53 (1978); *Giova v. Rosenberg*, 379 U.S. 18 (1964) (*per curiam*).

H.R. Rep. No. 109-72, at 172 (2005) (Conf. Rep.). In 1996, Congress passed the Illegal Immigration

Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-

546, which added the following to the jurisdictional provision of the INA:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review*–
>    (i) any judgment regarding the granting of relief under [8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c, or 1255], or
>    (ii) *any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title* [8 U.S.C. §§ 1151 et seq.] *to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under [8 U.S.C. § 1158(a)].

8 USC § 1252(a)(2)(B) (2004) (emphasis added).  In IIRIRA, Congress also added language that,

> reestablished that *only courts of appeals -  and not district courts - could review a final removal order* . . . . In addition, Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding . . . . Together, these provisions were intended to preclude all district court review of any issue raised in a removal proceeding.

H.R. Rep. No. 109-72, at 172 (2005) (Conf. Rep.) (emphasis added). Subsequently, the REAL ID

Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, added the following provision to § 1252:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as *precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals* in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added).  According to the Congressional Report accompanying

the REAL ID Act, the purpose of the amendments to the INA contained therein was to guarantee

that "all aliens will get review in the same forum - the courts of appeals," thus "eliminat[ing] the

problem of bifurcated and piecemeal litigation." H.R. Rep. No. 109-72, at 174. "Under section 106,

all aliens who are ordered removed by an immigration judge [are] able to appeal to the [Board of

Immigration Appeals] and then raise constitutional and legal challenges in the courts of appeals."
*Id.*

## IV.

When granting Chertoff's Motion to Dismiss, the Court instructed the Patels to file a Motion to Reconsider pursuant to Federal Rule of Civil Procedure 60(b) if they could identify any cases supporting the exercise of jurisdiction by the Court. The Court has reviewed the five cases the Patels have submitted -- *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002); *Firstland International, Inc. v. U.S. INS*, 377 F.3d 127 (2d Cir. 2004); *ANA Int'l, Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004); *Sabhari v. Reno*, 197 F.3d 938 (8th Cir. 1999); *Paunescu v. INS*, 76 F. Supp. 2d 896 (N.D. Ill. 1999) -- and finds none of these cases applicable to their claim.

All five cases were decided prior to the passage of the REAL ID Act of 2005, when -- to put it charitably -- confusion reigned in the federal judiciary over the extent to which a district court had jurisdiction in immigration cases. Following the passage of IIRIRA in 1996, courts reached conflicting interpretations of its provisions. Accordingly, Congress took action in 2005 to specify that constitutional and legal questions are within the jurisdiction of the courts of appeal, which reflected an "intent to preserve [a] broad effort to streamline immigration proceedings and to expedite removal while restoring judicial review of constitutional and legal issues." *Grass v. Gonzales*, 418 F.3d 876, 879 (8th Cir. 2005) (quoted in *Higuit v. Gonzales*, 433 F.3d 417, 420 (4th Cir. 2006)). Other provisions added to the INA by the REAL ID Act confirm this intention. See 8 U.S.C. § 1252(b)(9) (2004); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005); *Ishak v. Gonzales*, 422 F.3d 22 (1st Cir. 2005).

Apart from that, the cases cited by the Patels do not sustain their request. They held only that district courts might interpret and apply provisions of the INA to individual applicants. But the Patels ask this Court to engage in a completely different task. Conceding that their application is flatly barred by 8 CFR § 1245.10(j) (2006), they ask the Court to hold that the promulgation and adoption of 8 CFR § 1245.10(j) *in itself* was an invalid exercise of Chertoff's authority. The Court finds no support for this request. While Congress has not explicitly barred a district court from undertaking this task, the relevant statutes and cases make clear that the appropriate venue for relief for the Patels, if any, is the court of appeals, not the district court. *See Myong Jun Kim v. Gonzales*, No. CCB-05-485, 2006 U.S. Dist. LEXIS 9464, at *14-15 (D. Md. Mar. 7, 2006) ("[U]nder current Fourth Circuit law, § 1252(a)(2)(B)(i) appears to bar jurisdiction in this court even if constitutional claims or questions of law are presented.") The Court has conducted an exhaustive search, and with the exception of a few *habeas corpus* cases involving detained aliens, every case in which immigrants challenged administrative rules as *ultra vires* proceeded from the CIS to the Board of Immigration Appeals and then directly to the circuit courts of appeal. *See Momin v. Gonzales*, 447 F.3d 447 (5th Cir. 2006); *Guijosa de Sandoval v. Attorney General*, 440 F.3d 1276 (11th Cir. 2006); *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98 (3rd Cir. 2005); *Mouelle v. Gonzales*, 416 F.3d 923 (8th Cir. 2005); *Succar v. Ashcroft,* 394 F.3d 8 (1st Cir. 2005). *Cf. Higuit v. Gonzales*, 433 F.3d 417 (4th Cir. 2005).

Practical considerations militate in favor of the process just described. Since the Patels have yet to receive an order of removal from the CIS, they have not yet suffered a justiciable injury, a *sine qua non* for seeking legal relief. *See Massignani v. Immigration & Naturalization Service*, 438 F.2d 1276, 1278 (7th Cir. 1971). The requirement that a petitioner must suffer some sort of justiciable

injury prior to appealing for a legal remedy is one of the fundaments of our legal system. *See Abbott Labs. v. Gardner*, 387 U.S. 136 (1967). Allowing immigrants to resort to the federal courts only after they have exhausted the internal CIS process upholds that principle.

## IV.

For the foregoing reasons, the Court **DENIES** Plaintiffs Vijaykumar and Bhavenaben Patel's Motion for Reconsideration.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

August 31, 2006